BRITTON A. HILL ET AL., Appellants, *v.* GEORGE W. BAILEY ET AL., Respondents.

### November 25, 1879.

1. Where the title to real estate is in question, a general denial of the plaintiff's title will suffice for the admission of evidence of adverse possession for the statutory period.

2. While the Statute of Limitations does not run as between a trustee and the *cestui que trust*, when this relation is no longer recognized, and the beneficiary or co-tenant recognizes and acquiesces in the adverse possession, the statute begins to run.

3. Objections to the introduction of testimony before a referee, raised for the first time upon exceptions to the referee's report, come too late to be available.

APPEAL from the St. Louis Circuit Court.
*Affirmed.*

BRITTON A. HILL and JOHN F. DARBY, for the appellants: Where the Statute of Limitations is relied upon as a defence, it must be pleaded. — *Tramell* v. *Adams*, 2 Mo. 155; *Benoist* v. *Darby*, 12 Mo. 196; *Boyce* v. *Christy*, 47 Mo. 70; *Wynnes* v. *Cory*, 48 Mo. 346; *Stiles* v. *Smith*, 55 Mo. 366. "No lapse of time is a bar to a direct trust, as between trustee and *cestui que trust*." — *Bailey* v. *Barnett*, 12 Mo. 3; *Dillon* v. *Bates*, 39 Mo. 292. Adverse possession must be hostile, and taken under color of title, before the statute runs. *Hamilton* v. *Boggs*, 63 Mo. 233; *Wilkinson* v. *Allen*, 67 Mo. 502. The mortgagee in possession

may be made to account for rents and profits. —*Anthony*
v. *Rogers*, 17 Mo. 394; *s. c.* 20 Mo. 281; *Rose* v. *Pilot
Knob*, 49 Mo. 124; *Johnson* v. *Houston*, 47 Mo. 227.
" To bar an equity of redemption, twenty years must have
elapsed since the last recognition of the mortgage."—
*McNair* v. *Scott*, 25 Mo. 182; 18 Mo. 522; 34 Mo. 285.

GEORGE W. BAILEY, for the respondents : " The construc-
tion put upon the existing statute of limitation as to real
actions is, that when *ten years* have elapsed from the taking
effect of the act, the action is barred." — *Callaway County*
v. *Nolley*, 31 Mo. 393; *Carondelet* v. *Simon*, 37 Mo. 408;
*Gilker* v. *Brown*, 47 Mo. 105; *Hunter* v. *Hunter*, 50 Mo.
445; *Ricord* v. *Watkins*, 56 Mo. 555. The Statute of
Limitations need not be pleaded.—*Nelson* v. *Broadhack*,
44 Mo. 596; *Fugate* v. *Pierce* 49 Mo. 441; *Warfield* v.
*Lindell*, 38 Mo. 561. "It is not only a bar, but con-
stitutes an *affirmative legal title.*" —*Merchants' Bank* v.
*Evans*, 51Mo. 335.

LEWIS, P. J., delivered the opinion of the court.

In 1846, John Scott and wife conveyed the real estate in
controversy to Solomon P. Ketchum and Franklin A. Dick,
in trust, to secure the payment of certain promissory notes
in favor of the defendant, George Bailey.   In 1849, Scott
and wife conveyed the same property to Britton A. Hill,
plaintiff, and George Marshall, in trust, for the use and
benefit of the wife during her natural life, with remainder
to the children of the grantors.   Mrs. Scott died in 1854,
leaving children, the plaintiffs Thomas J. Scott, William
E. Scott, and Emma, who afterwards married the plaintiff
George Wright.   In 1862 or 1863, John Scott moved with
his children to the city of New York, where he resided
until his death, in 1876.   The plaintiffs' testimony
in this cause tended to show that Scott, when about
to leave for New York, delivered the property in contro-

versy to the defendant George Bailey, who was to collect
the rents and apply the proceeds, as realized, in payment
of the trust debt which was still held by him, and upon
which little or nothing had been paid. The trustees, Mar-
shall and Ketchum, have in the meantime departed this
life, and the present suit is for the purpose of compelling
the defendant George Bailey to account for his receipts
and disbursements, of ascertaining whether the trust debt
has not long since been discharged, leaving a surplus in
defendant Bailey's hands, and of obtaining a divestiture of
whatever title is supposed to remain in Bailey or his sur-
viving trustee and causing the same to be vested in the
plaintiffs, and for other proper relief. A default was taken
against the defendant Dick, and Bailey's answer was a
general denial.

The cause was sent to a referee, who reported against the
plaintiffs' claim, chiefly on the ground that the defendant
had acquired an absolute title by operation of the Statute
of Limitations.

The plaintiffs insist that the finding and judgment were
erroneous, because the answer did not set up the statute in
defence. When the statute is relied on as a bar to the
remedy merely, it must be specially pleaded. The rule is
ancient, and needs no citation of authorities to sustain it.
But where the title to real estate is in question, the opera-
tion of the statute is found to have a higher range. It is
capable of conferring an absolute title. Hence it has long
been held that a general denial of the plaintiff's title will
suffice for the admission of evidence of adverse possession
for the statutory period; because this will not merely bar
the remedy, but may establish a title in the defendant which
will conclusively negative any ownership in the plaintiff.
In other words, it sustains and verifies the denial of the
plaintiff's title. *Nelson* v. *Broadhack,* 44 Mo. 596. The
rule is not confined to actions of ejectment. The reason-
ing upon which it is founded sanctions its application to

any case wherein the title to land is in dispute. There was, therefore, no error in admitting this defence under the general denial.

The defendant Bailey, in testifying, related sundry conversations and admissions of John Scott during his lifetime. No objection was offered against this testimony at the time of its introduction before the referee. The objections raised upon exceptions to the referee's report came too late to be available. *Waldo* v. *Russell*, 5 Mo. 387 ; *Railroad Co.* v. *Moore*, 37 Mo. 338 ; *Powers* v. *Allen*, 14 Mo. 367 ; *Shaler* v. *Van Wormer*, 33 Mo. 386.

A considerable number of witnesses were introduced by the plaintiffs, who testified to frequent conversations with the defendant Bailey, in which he stated that he was holding and managing the property as agent for the owners ; that he held a deed of trust on it, and would like to get the money and have the property off his hands ; that he was collecting the rents for minor heirs, who needed the money, etc. These admissions appear to have been made at various times after the year 1861, and covering several successive years. The defendant's testimony tended to prove that as early as 1863 he had an understanding with John Scott, to the effect that Bailey should take and keep the property for the debt, which Scott was unable to pay ; that thenceforth he claimed, held, and treated the property as his own ; that he was always willing for the Scotts to buy the property back by a payment of the debt and interest, and that nothing more was implied in his admissions to the witnesses who had testified ; that no demand for, or claim of the property was ever made upon him until the institution of this suit ; that some time after he had so taken the property into absolute possession, with the consent of John Scott, he had a conversation on the subject with Scott, who did not pretend to any claim upon the property, or to any right of redemption ; that the defendant, since the year 1863, had never made any distinction between this and other property

owned by him, in the payment of taxes, the collection of rents, and all other matters pertaining to entire ownership, etc. The referee's findings of facts were in accordance with this testimony.

The plaintiffs' counsel call our attention to the well-known rule that the Statute of Limitations never begins to run between a trustee and the *cestui que trust*. But it seems to be forgotten that this holds good only so long as that relation continues, or is fully recognized by the parties. No length of possession by a trustee, as such, will give him a title as against the beneficiary. So also as to a tenant in common against his co-tenant. But it is not denied anywhere that the trustee or the tenant in common may repudiate existing relations, and thenceforth hold adversely to the beneficiary or the co-tenant. What acts will amount to such a repudiation and adverse holding is sometimes a subject of controversy. There can be little doubt, however, when the beneficiary or co-tenant himself recognizes and acquiesces in the hostile possession. *Elmendorf* v. *Taylor*, 10 Wheat. 152 ; *Demarest* v. *Wynkoop*, 3 Johns. Ch. 129 ; *Chick* v. *Rollins*, 44 Me. 104 ; *Roberts* v. *Littlefield*, 48 Me. 61. The application of the doctrine to the case of a mortgagee in possession regards him as a trustee for the mortgageor. So, in case of a deed of trust for securing a debt, the creditor in possession stands on the same footing with a mortgagee.

Upon an examination of all the testimony in this case, we cannot find that the referee erred in his conclusions. The defendant Bailey, originally a mortgagee, appears to have claimed and held as absolute owner for about fourteen years before the institution of this suit. It is not shown that any of the plaintiffs were under a disability bringing them within the provisos of the statute. The case of *Roberts* v. *Littlefield* (*supra*) strongly resembles the present case in a feature upon which the plaintiffs rely with a good deal of confidence. In that case, as in this, the mortgagee

had been heard to say repeatedly, after his entry, that he would relinquish his right upon the payment of a certain sum. It is added, in the opinion, that "it is not satisfactorily shown that he intended to admit that the mortgage was then open." A similar remark would apply to the defendant Bailey in the present case. But here, as in the other case, it would indicate nothing in contravention of the adverse possession of the mortgagee.

We discover no material error in the record. All the judges concurring, the judgment is affirmed.